UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
—————————————————————————

**PATRICK RUDDY,**

                                Plaintiff,

           -vs-

**CAZENOVIA CENTRAL SCHOOL DISTRICT,
CHRISTOPHER DiFULVIO and MOLLY
HAGAN,**

                            Defendants.

—————————————————————————

                                          **COMPLAINT**
                                          **WITH JURY DEMAND**

                          Civil Action No.:  5:25-cv-242 (ECC/MJK)

The Plaintiff, PATRICK RUDDY, by and through his attorneys, SAUNDERS KAHLER, L.L.P., complaining of the Defendants above-named, as and for his cause of action alleges as follows:

## PARTIES

1.     Plaintiff, PATRICK RUDDY, (hereinafter "Plaintiff"), is a resident of the County of Madison and State of New York.

2.     Upon information and belief, Defendant CAZENOVIA CENTRAL SCHOOL DISTRICT ("School District") is a "municipal corporation," as defined by Section 66 of the General Construction Law of the State of New York and is governed by the laws of the State of New York, including, but not limited to, the New York Education Law, and is located at 31 Emory Drive, Cazenovia, New York 13035.

3.     Upon information and belief, Defendant Christopher DiFulvio (hereinafter, "DiFulvio") is currently the Superintendent of Schools for School District and is a resident of the County of Madison and State of New York.

4.      Upon information and belief, Defendant Molly Hagan (hereinafter, "Hagan") is currently the Principal of Cazenovia High School, which is part of the School District, and is a resident of the County of Madison and State of New York.

## JURISDICTION

5.      Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth more fully herein.

6.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331, 28 U.S.C. 1342(a)(3) and 28 U.S.C. §1367.

7.      Venue is proper pursuant to 28 U.S.C. §1391(a) and (b), as, upon information and belief, Defendants do business in the United States District Court of the Northern District of New York, and a substantial portion of the events or omissions giving rise to the claims occurred in said district.

8.      On or about July 28, 2023, Plaintiff filed a Verified Notice of Claim with Defendant School District (hereinafter, the "First Notice of Claim") making various allegations of discrimination and retaliation against Defendant School District, through the actions of its agents and employees, pursuant to the New York Executive Law, the New York Labor Law, the ADA and the Rehabilitation Act.

9.      On or about March 8, 2024, Plaintiff filed a complaint with the New York State Division of Human Rights (NYSDHR Case No. 10234491) against Defendants School District, DiFulvio and Hagan (the "NYSDHR Complaint"), which was duly filed with the EEOC (EEOC Charge No. 16GC402956) ("EEOC Charge No. 1"), based upon the allegations set forth in the First Notice of Claim.

10.     On or about November 18, 2024, the NYSDHR Complaint was dismissed for

administrative convenience pursuant to NYCRR 465.5(e)(2)(vi).  A copy of the dismissal is attached hereto as **Exhibit A**.

11.     Attached hereto as **Exhibit B** is a copy of the Dismissal of the United States Equal Employment Opportunity Commission and Notice of Right to Sue dated December 16, 2024, as to EEOC Charge No. 1.

12.     On or about April 30, 2024, Plaintiff filed a Verified Notice of Claim with Defendant School District (hereinafter, the "Second Notice of Claim") concerning the continued persistent and intentional retaliation against Plaintiff as a result of Plaintiff complaining about Defendants' violations of various state and federal laws as well as serving the First Notice of Claim.

13.     On or about September 13, 2024, Plaintiff filed second charge with the United States Equal Employment Opportunity Commission against Defendant School District (EEOC Charge No. 525-2024-02545) concerning additional retaliation which had taken place after EEOC Charge No. 1 ("EEOC Charge No. 2").

14.     Attached hereto as **Exhibit C** is a copy of the Dismissal  of the United States Equal Employment Opportunity Commission and Notice of Right to Sue dated December 13, 2024, as to EEOC Charge No. 2.

15.     Pursuant to New York Education Law §3813(1), Plaintiff filed the First Notice of Claim and the Second Notice of Claim.  Defendant School District held 50-h hearings on both claims.  Thirty (30) days have gone by and Defendant School District has neglected to make payment to Plaintiff on either claims to date.

## FACTS

16.     Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth more fully herein.

17.     Plaintiff has been employed with Defendant School District since September 2016. Most recently, he has held the position of Director of Pupil Personnel Services with Defendant School District.

18.     Plaintiff's job duties include, but are not limited to, overseeing employees and activities of (i) the Special Education Department, (ii) employees providing mental health services to students, (iii) nurses, and (iv) service providers for physical therapy, occupational therapy, speech language pathologists, school psychologists, and behavioral specialists. Plaintiff additionally has chaired the Committee on Special Education ("CSE") and the Committee on Preschool Special Education ("CPSE") for Defendant School District. Plaintiff was never provided with a formal job description, although one was promised.

19.     Between 2018 and 2021, Defendant Hagan, who has been the Principal for Cazenovia High School at all times relevant (along with other administrators at the Cazenovia High School directed by Defendant Hagan) routinely failed to comply with New York laws and regulations that govern the services provided to students with disabilities and the due process obligations for said children, including *inter alia,* N.Y. Educ. Law §3214 et seq and N.Y. Comp. Codes R. & Regs. tit. 8, §§ 200 et seq through §§201 et seq. More specifically, and as an example only, (i) Individualized Education Plans ("IEPs") for students were changed by Defendant Hagan without CSE meetings being scheduled and/or with proper notice being provided to parents in violation of state law; (ii) Defendant Hagan instructed students with IEP's to stay home or students were removed from school without consideration of age and graduation progress in violation of federal law; and (iii) students with disabilities were not permitted to continue in school until they reach the age of twenty-one (21) or successfully complete graduation requirements as required by federal law.

20.     Plaintiff, in his role as Director of Pupil Personnel Services, along with other administrators, were able to address Defendant Hagan's failures to comply with the above referenced state and federal laws and regulations until 2021 when the former Superintendent, Mr. Matthew Reilly, retired and was replaced with Defendant DiFulvio.

21.     After Defendant DiFulvio became the Superintendent in 2021, he actively interfered with Plaintiff's efforts to comply with state and federal laws and regulations regarding students with disabilities and prevented Plaintiff from addressing the failure of Defendant School District's administrators, and more specifically, Defendant Hagan, to comply with said laws and regulations. Beginning in mid-2021, and through May of 2023, Plaintiff routinely advised Defendant DiFulvio regarding Defendant School District's failure to comply with said state and federal laws and regulations, and Defendant Hagan's disregard of the same. Defendant DiFulvio failed to address Plaintiff's concerns regarding student discipline of individuals with disabilities and allowed violations and Defendant Hagan's actions to continue to go unchecked.

22.     From 2021 through May of 2023, Plaintiff routinely sought to address Defendant School District's practice of suspending students with disabilities in violation of New York Education law and regulations. Despite these efforts, Plaintiff was ignored by Defendant DiFulvio and Defendant Hagan.

23.     In or about November 2021, Plaintiff heard Defendant DiFulvio and Defendant Hagan discussing a Manifestation Determination Hearing ("MDH") regarding the suspension of a student with a disability, a hearing mandated by New York law. These individuals intended to conduct an MDH on the next business day and suspend the student for the remainder of the year, which Plaintiff believed would have violated the timely notice requirements of the Education law and regulations concerning MDH's. Plaintiff addressed this with Defendants DiFulvio and

Hagan and in the process learned that another student with an IEP had already been suspended without proper and timely notice or an MDH in violation of the Education law and regulations referenced above.

24.    After learning about the other student, Plaintiff informed Defendant DiFulvio and Defendant Hagan that Defendant School District had failed to engage in the correct process required by the Education law and regulations for disciplining students with disabilities. Plaintiff also insisted that Defendant School District correct its improper practices. When Plaintiff asked to meet with Defendant School District's counsel to discuss Defendant School District's improper actions, Defendant DiFulvio refused and stated that a meeting "was not needed."

25.    Plaintiff attempted to explain to Defendant DiFulvio and Defendant Hagan that he believed that Defendant School District's actions violated New York law and regulations regarding the discipline of students with disabilities. In an effort to address Defendant School District's improper practices, Plaintiff also created an outline containing the steps required for disciplining students with disabilities, which he provided to Defendant DiFulvio and Defendant Hagan.

26.    Despite promising to follow Plaintiff's outline, Defendant DiFulvio, Defendant Hagan, and Defendant School District itself failed to take corrective actions and continued to violate the rights of students with disabilities For example, on or about February 8, 2022, Plaintiff learned that Defendant Hagan had conducted another MDH and had suspended a student with disabilities in violation of the New York Education law and regulations. Plaintiff again reported this to Defendant DiFulvio.

27.    In or about February 2022, Plaintiff also learned that certain students with

disabilities were being removed from their scheduled Math class and were to be placed in a self-contained class without a proper curriculum. Upon learning about these actions, Plaintiff expressed serious concerns to Defendants DiFulvio and Hagan that these students were not provided a curriculum that would allow them to earn a high school credit. Plaintiff believed that these actions violated the requirements of the Free Appropriate Public Education ("FAPE") and the Individuals with Disabilities Education Act ("IDEA") as the students were being placed in a more restrictive environment and were not given access to the same curriculum as other non-disabled students.

28.    On or about March 22, 2022, Plaintiff attended a meeting with Defendant DiFulvio during which he presented his concerns about Defendant School District's failure to comply with the Education law regulations for disciplining students with disabilities along with its failure to comply with the requirements of the ADA, the Rehabilitation Act, IDEA, and FAPE. Plaintiff also discussed how numerous students with IEPs had missed half of their regent's level Global Studies classes because of scheduling issues, and students with IEPs being placed in regent's level Algebra classes without a prepared curriculum.

29.    Despite Plaintiff raising all of the issues with Defendant DiFulvio between the fall of 2021 and late spring of 2022, Defendant DiFulvio continued to allow Defendant School District to discipline students and failed to remedy many of the educational requirements in violation of the Education Law and its regulations, the ADA, the Rehabilitation Act, IDEA and FAPE.

30.    In or about the first week of June 2022, Defendant Hagan directed Plaintiff to conduct a hearing for a student with a 504 Plan where the student's parents had not received timely notice of the hearing as it was provided on the same day. Again, Plaintiff believed that

the practice of providing notice to the parents on the same day as the hearing violates state and federal laws and regulations governing the discipline of students with disabilities. Plaintiff objected to Defendant School District conducting a hearing without the parents having received sufficient notice.

31.     On or about June 30, 2022, Plaintiff had his annual review with Defendant DiFulvio. The review was generally favorable, and Defendant DiFulvio only raised the issue of Plaintiff's supervision of teachers as an area needing improvement by Plaintiff. In this meeting, Plaintiff again complained and protested regarding Defendant School District's treatment of students with disabilities and advised Defendant DiFulvio that Plaintiff did not believe Defendant DiFulvio was receptive to Plaintiff's concerns about Defendant School District's failure to comply with requirements in the Education Law and regulations for disciplining students with disabilities, and with the ADA, the Rehabilitation Act, FAPE, and IDEA. Defendant DiFulvio stated the failure to comply with the law had not occurred "in a while," and Plaintiff advised Defendant DiFulvio that "unfortunately, it happened a few weeks ago." Defendant DiFulvio appeared upset with Plaintiff and ended the meeting.

32.     Subsequent to Plaintiff's review on June 30, 2022, Defendants began a pattern and practice of retaliatory actions for Plaintiff's year long complaints of Defendants' failure to comply with state and federal laws regarding disabled students, which included Plaintiff being effectively demoted, key roles being removed from his job duties, Defendant DiFulvio publicly making false accusations and embarrassing Plaintiff at meetings, and disciplining Plaintiff for matters which did not occur.

33.     On July 1, 2022, Kevin Linck was hired by Defendant School District as the Assistant Superintendent for Equity, Inclusion and Human Resources, effectively replacing Ben

New, Director of Curriculum and Instruction. Mr. Linck's new job duties included overseeing the Special Education Department. Prior to this, Plaintiff had reported directly to Defendant DiFulvio. As of July 1, 2022, Plaintiff began to report to Mr. Linck. Mr. Linck's new job description provided he attend and facilitate numerous meetings that Plaintiff had previously facilitated, although this had not been discussed with Plaintiff and it was unclear which, if any, of Plaintiff's job duties Mr. Linck was supervising and which he was taking over.

34. In July of 2022, Plaintiff's office was moved from the Middle School/High School Campus to the Elementary School, although the vast majority of his job duties required him to be at the Middle School/High School campus.

35. Despite having indicated to Plaintiff that he was doing very well during this annual review at the end of June of 2022, in August of 2022, Plaintiff was placed on a Performance Improvement Plan ("PIP") in retaliation for having objected to Defendant School District's violation of the Education Law and regulations for disciplining students with disabilities, the ADA, the Rehabilitation Act, IDEA, and FAPE.

36. On August 18, 2022, Defendant DiFulvio directed Plaintiff to meet with Assistant Superintendent Linck to review the PIP. Defendant DiFulvio indicated to Plaintiff that he would not need to have a union representative present because it related only to the prior discussed staff evaluations and was not disciplinary in nature. Relying upon Defendant DiFulvio's representation, Plaintiff attended the meeting without a union representative.

37. When Plaintiff was presented with the PIP, it contained six improvement items, which, if not corrected, could lead to further discipline including termination. Plaintiff advised Defendant DiFulvio he believed the PIP had been put in place in retaliation for Plaintiff complaining that Defendant DiFulvio and Defendant School District continued to not comply

with the Education law and regulations governing the discipline of students with disabilities, and with the ADA, the Rehabilitation Act, FAPE, and IDEA. The PIP also required a Union representative to be present.

38.    In September of 2022, Plaintiff learned that there had been two (2) more instances of Defendant School District failing to comply with the timely notice requirements for students with disabilities in scheduled Manifestation Determination Hearings. Plaintiff believes that demonstrated Defendant School District's continuing disregard for the requirements of the Education Law, its regulations, the ADA, the Rehabilitation Act, FAPE, and IDEA and for the rights of students with disabilities.

39.    On or about September 9, 2022, another employee contacted Plaintiff regarding an issue with the schedules for several students with IEPs at the high school. Plaintiff learned from that employee that certain changes had been made to the IEPs of students without Plaintiff's or the employee's prior knowledge, despite Plaintiff having previously met with Defendant DiFulvio in March of 2022, regarding similar problems with the schedules and improper changes to student's IEPs.

40.    On or about September 15, 2022, Plaintiff attended a meeting with Defendant Hagan, an Assistant Principal/Administrative intern, and the above-named employee to discuss, *inter alia*, the scheduling problems for students with IEPs. Although he was not invited, Defendant DiFulvio attended claiming that "I would like to be here for this."

41.    During the meeting, an issue arose regarding whose job duty it was to ensure that the IEPs were being properly developed, and the students' schedules planned accordingly. It was discovered that while the job duties were assigned to the Department Leader, the specific duties had not been included in the written job description for the role of Department Leader when it

had been drafted. Defendant DiFulvio then accused Plaintiff of having failed to perform his job duties by insufficiently drafting the Department Leader job description.

42.     When Plaintiff attempted to explain to Defendant DiFulvio that he had not been involved in or asked to be involved in the drafting of the Department Leader job description, Defendant DiFulvio asserted to the other attendees at the meeting that Plaintiff had attended a meeting where the posting had been discussed, claimed that Plaintiff failed to offer any input and had ignored an email asking him to participate. Defendant DiFulvio then stated that Plaintiff was "lazy" and "decided not to participate." Three other employees were present when Defendant DiFulvio made the foregoing statements to (and about) Plaintiff. Defendant DiFulvio's statements regarding Plaintiff were false. Plaintiff believes that Defendant DiFulvio's actions were retaliatory based upon Plaintiff's continued complaints of Defendant School District's violation of the Education Law and regulations for disciplining students with disabilities, the ADA, the Rehabilitation Act, FAPE, and IDEA.

43.     After the meeting, the above-named employee apologized to Plaintiff for Defendant DiFulvio's conduct and stated she had never seen any other employee addressed in such a demeaning manner.

44.     On September 15, 2022, Defendant DiFulvio sent an email to Plaintiff admitting that his earlier statements were false but did not copy any of the other participants in the meeting. On September 20, 2022, Plaintiff responded to Defendant DiFulvio and expressed concern about Defendant DiFulvio's continued retaliatory actions.

45.     On or about September 21, 2022, Plaintiff emailed Defendant DiFulvio and Mr. Linck stating that the meeting on September 15, 2022, was intended to address the scheduling problems for students with IEPs and these matters had not been addressed. Plaintiff also

indicated that he would speak with Meg Schlegel, the New York State Education Department Regional Associate for Special Education regarding his concerns. Approximately one hour later, Defendant DiFulvio sent an email to Plaintiff directing him to attend a meeting to discuss his job performance, an obvious retaliatory act for indicating he was going to the State Education Department with his concerns.

46.     Defendant DiFulvio's September 21, 2022, email stated the purpose of the meeting was to discuss employee contracts, special education programming and transportation. Although Defendant DiFulvio advised Plaintiff he was entitled to Union representation, the email did not indicate the nature of the actions which would entitle Plaintiff to such representation. The meeting was scheduled for the next day, giving the Plaintiff little time to prepare.

47.     On or about September 22, 2022, Plaintiff attended the meeting as directed by Defendant DiFulvio. During the meeting, Defendant DiFulvio interrogated and berated Plaintiff about his job performance for approximately one hour. Defendant DiFulvio's questions were aggressive and belittling to Plaintiff during this meeting. Plaintiff's job performance had not changed in any manner since his positive annual review in June of 2022, and occurred right after Plaintiff had again called Defendant DiFulvio out for Defendant School District's violation of the Education Law and regulations for disciplining students with disabilities, the ADA, the Rehabilitation Act, FAPE, and IDEA and told him he was going to the Department of Education with his concerns.

48.     On or about October 12, 2022, Mr. Linck held another meeting with Plaintiff during which he provided Plaintiff with a Counseling Memorandum ("Counseling Memo"), which specifically outlined how Plaintiff had not been complying with the unsubstantiated PIP

and the items which had been raised during the ambush that had occurred on September 22, 2022. The vast majority of the complaints related to  Plaintiff not following the retaliatory directives of Defendant DiFulvio.

49.    During the meeting with Mr. Linck, Mr. Linck disclosed Defendant DiFulvio had been instrumental in preparing the Counseling Memo despite Mr. Linck being Plaintiff's direct supervisor. Plaintiff informed Mr. Linck and another employee who was present that Defendant DiFulvio had been making ad hominem attacks regarding his performance that were interfering with his ability to perform his job. As a result, Plaintiff received a notice stating that a Hostile Work Environment investigation regarding Defendant DiFulvio's conduct to Plaintiff would be conducted.  In or about December 2022, Defendant School District asked Plaintiff if he would withdraw his complaint through his SAANYS union representative, which he did not.  Plaintiff has not received any information from Defendant School District regarding the status of this alleged investigation and, upon information and belief, Defendant School District has not investigated the complaint, in violation of its own policies.

50.    After receiving the October 12, 2022, Counseling Memo, Plaintiff submitted his rebuttal to Mr. Linck which he believes was shared with  Defendant DiFulvio.

51.    Plaintiff believes that he received the October 12, 2022, Counseling Memo in retaliation for having objected to Defendant School District's violation of the Education Law and regulations for disciplining students with disabilities, the ADA, the Rehabilitation Act, FAPE, and IDEA and Plaintiff's consistent complaints that Defendant DiFulvio was retaliating against him for making the complaints.

52.    On or about December 15, 2022, Plaintiff alerted Defendant Hagan to an incident where a student had called another student a "fucking N____". Plaintiff told Defendant Hagan he

believed this violated Defendant School District's Code of Conduct and DASA. Defendant Hagan said she'd "take care of it".

53.    On December 16, 2022, the student still remained in school.  When Plaintiff questioned Defendant Hagan about why the student had not been disciplined, she claimed the student was a "good kid" and she decided to use restorative and punitive measures.

54.    Upon information and belief, the incident report regarding the student failed to indicate the student had used language which violated the student Code of Conduct and DASA.

55.    As Director of Pupil Personnel Services, Plaintiff had historically been involved in student disciplinary matters. Plaintiff emailed Defendant DiFulvio and Mr. Linck about the student's behavior and Defendant Hagan's failure to take appropriate actions.

56.    In response to the email, Mr. Linck instructed Plaintiff not to review the incident reports unless the student had an IEP.

57.    On or about January 23, 2023, Plaintiff received an email from Defendant Hagan stating that a student would be suspended for five (5) days following a physical altercation with another student. She also stated that a formal hearing would be conducted. Plaintiff had investigated the incident and was aware that the student had an IEP and suffered from emotional issues.  He was also aware that the altercation had been with the student's relative, who had actually instigated the fight, and the student had attempted to avoid the altercation with the relative.

58.    Plaintiff believed that Defendant Hagan was deliberately ignoring these facts in an effort to remove the student from the Cazenovia High School into a BOCES program in violation of the student's rights. Defendant Hagan had previously attempted to force this same student to attend a BOCES program and she had previously attempted to influence members of

an MDH committee to change his program to a more restrictive environment. Plaintiff believes that Defendant Hagan's actions were improper because she was the administrator who had suspended the student and, as such, should not have been trying to influence the MDH committee before the hearing.

59.    During the hearing, Defendant Hagan claimed that the altercation was a result of the student's disability and insisted that he should be sent to an alternative placement (BOCES). Plaintiff disagreed with Defendant Hagan because he believed that she was attempting to subject the student to more severe punishment in violation of the Education Law, its regulations, FAPE, and IDEA.

60.    On or about October 28, 2022, May 2, 2023, and May 14, 2023, in email and conversations, Plaintiff requested that Defendant School District provide students with disabilities with support after school if required by their IEPs. For example, if a student's IEP required a one-to-one aide, Defendant School District was obligated to provide an aide during any extracurricular activities. Defendant DiFulvio and Defendant School District ignored Plaintiff's requests, although they had been honored in the past prior to Defendant DiFulvio becoming Superintendent. As a result, Plaintiff would attend after-school events himself outside of his contracted hours to support students with disabilities.

61.    In December of 2022, Defendant DiFulvio requested counsel to Defendant School District, Jennifer Mathews, Esq., to review all special education files and determine if there were deficiencies or processes which should be changed (the "Audit").

62.    Plaintiff met with Jennifer Mathews, Esq. in February of 2023. Plaintiff advised Ms. Mathews that Defendant DiFulvio requested the Audit in order to manufacture cause to terminate his employment, as Defendant School District had recently passed State Education

audits and there had been no indication of any issues. During this meeting, Plaintiff reported to Ms. Mathews Defendant DiFulvio's and Defendant Hagan's continued failure to comply with the requirements of the law and its regulations regarding disciplining students with disabilities.

63.    Plaintiff pulled the physical files requested by Ms. Mathews, however, Plaintiff and his secretary advised Ms. Mathews that the vast majority of the contents of the files was contained in the electronic version of the files held on the computer system.

64.    In or about March 2023, Plaintiff learned from a colleague that Defendant DiFulvio intended to use the Audit to terminate him.

65.    In or about late April 2023, Defendant DiFulvio directed Plaintiff to report to him for a meeting regarding the Audit.  During the meeting, Plaintiff was told that the Audit report by Ms. Mathews was "pretty significant." He was also informed that Defendant School District intended to commence proceedings under Education Law §3020A to terminate Plaintiff if he did not resign.

66.    Defendant School District did not permit Plaintiff to read the Audit report himself.  Upon information and belief, the Audit criticized Plaintiff by stating certain documentation was not kept in files. However, Ms. Mathews never asked for access to the electronic files, although she was told the records were stored there and she could be granted access. Upon further information and belief, many of the records which Ms. Mathews believes were not in the files were in the electronic files. Plaintiff was never given an opportunity to actually read the Audit report or respond to it.  If Plaintiff had been able to do so, he could have advised where all the records were actually kept. Defendant DiFulvio was using the Audit to create cause for Plaintiff to be terminated on the very issues Plaintiff had been objecting to.

67.    Defendant School District continued to disregard the rights of students with

disabilities and its continuing violation of the Education law, its regulations, FAPE, and IDEA. In or about the last week of April 2023, three more students with disabilities were suspended without proper notice being given to their parents. It should be noted the Audit by Ms. Mathews only addressed the record keeping practices of Plaintiff and did not address the significant issues raised by Plaintiff regarding the conduct of Defendants DiFulvio and Hagan.

68.    On May 17, 2023, Defendant DiFulvio gave Plaintiff a letter, dated May 17, 2023, stating that he had been placed on administrative leave and prohibiting him from being on campus. The letter also stated that Plaintiff would need written permission from Defendant DiFulvio himself to attend any event on school grounds.

69.    Having experienced serious retaliation by Defendant DiFulvio since mid-2022, Plaintiff was concerned about Defendant DiFulvio fabricating grounds for his termination and, therefore, Plaintiff began exploring other job opportunities in the spring of 2023. As a result, Plaintiff was seeking employment in other school districts.

70.    Upon information and belief, in May of 2023, Plaintiff was a finalist for two (2) administrative positions at other school districts but did not receive either position. Upon information and belief, Plaintiff believes that he did not receive one position after someone with knowledge of his administrative leave spoke to an administrator in the other districts and provided untrue and potentially defamatory information regarding being placed on administrative leave.

71.    Upon information and belief, Plaintiff did not receive the other position after the school district "discovered" that Plaintiff had been placed on leave.

72.    At the time Plaintiff was placed on administrative leave, Plaintiff had three

children attending Defendant School District at that time and missed countless events due to Defendant DiFulvio's actions. On December 22, 2023, Defendant DiFulvio sent a certified letter falsely stating that Plaintiff was in violation of this directive and stated that Plaintiff again needed the Superintendent's signed written permission to attend his children's school events. Defendant DiFulvio also stated that Plaintiff was not permitted to attend community sponsored events on campus.

73.     Having experienced serious retaliation by Defendant DiFulvio since mid-2022, Plaintiff was concerned about Defendant DiFulvio fabricating grounds for his termination and, therefore, Plaintiff began exploring other job opportunities. As a result, Plaintiff was seeking employment in other school districts. Plaintiff was a finalist for two positions but did not receive either position. Upon information and belief, Plaintiff believes that he did not receive one position after Defendant DiFulvio spoke to an administrator in the other district and provided untrue and potentially defamatory information. Upon information and belief, Plaintiff did not receive the other position after Defendant School District "discovered" that Plaintiff had been placed on leave. Upon information and belief, Defendant Hagan reached out to an Administrator at this district to inform them that Plaintiff was on administrative leave.

74.     As the Plaintiff is subject to the disciplinary/termination procedures of New York Education Law, Defendant School District cannot terminate him without following the procedures of §3020A of the Education Law. Though Defendant School District is required to file §3020A charges no less than thirty (30) days or the next School Board Meeting from the initial date of Plaintiff being placed on Administrative Leave, Defendant School District did not file a formal charge until March 18, 2024, almost a year later.

75.     During that time period, Defendant School District, at the behest of Defendant

DiFulvio, performed an "investigation" into Plaintiff's conduct with no formal charge or accusation.

76.    Defendant School District placing Plaintiff on Administrative Leave and seeking to terminate his employment pursuant to §3020A is in retaliation for Plaintiff having objected to Defendant School District's violation of the laws and regulations for disciplining students with disabilities, the ADA, the Rehabilitation Act, FAPE, and IDEA. Defendant School District's actions have caused Plaintiff reputational damage, have made it virtually impossible to obtain other employment and is causing Plaintiff stress, pain, and suffering.

77.    On or about July 28, 2023, Plaintiff filed the First Notice of Claim making various allegations of discrimination and retaliation against Defendant School District, through the actions of its agents and employees, pursuant to the New York Executive Law, the New York Labor Law, the ADA and the Rehabilitation Act.

78.    The First Notice of Claim was based upon, among other matters, Defendant School District's harassment and then suspension of Plaintiff on May 17, 2023, in retaliation for Plaintiff's continued complaints to Defendant School District that they were violating, among other matters, the ADA and the Rehabilitation Act.

79.    After Plaintiff filed the First Notice of Claim, Defendant School District continued to engage in retaliatory conduct by conducting an investigation, including, but not limited to, conducting "interviews" of numerous employees of Defendant School District regarding the employees' interactions with Plaintiff in an effort to fabricate information to substantiate moving forward with filing formal charges to terminate Plaintiff.

80.    Upon information and belief, the investigation involved  misleading and suggestive questions to multiple Defendant School District employees, which, upon information

and belief, made many employees uncomfortable, as these employees did not agree with or confirm the statements which they were being asked to confirm. In addition, Defendant School District and their agents interviewed employees multiple times. In addition, upon information and belief, the investigation resulted in numerous false and misleading statements made by Defendant School District to various employees in conducting the investigation which Plaintiff believes has been repeated within the community, although the statements have no basis in fact.

81.     On March 18, 2024, Defendant School District had a regularly scheduled Board of Education meeting, and the Board of Education found probable cause that charges should be filed against Plaintiff pursuant to Education Law §3020-a seeking to terminate Plaintiff's employment.

82.     Upon information and belief, at some time after March 18, 2024, Defendant School District transmitted a Notice of Determination of Probable Cause to the New York State Department of Education advising them Defendant School District's Board of Education had met in executive session on March 18, 2024, and determined there was probable cause for charges to be filed against Plaintiff pursuant to Education Law §3020-a to terminate his employment.

83.     Plaintiff maintains the investigation and resulting charges under Education Law §3020-a were filed in continued retaliation against Plaintiff's actions for complaining about Defendant School District failing to follow state and federal laws as it pertained to students with disabilities, as well as Plaintiff filing the First Notice of Claim (and the factual basis thereof), including, but not limited to, charges that Defendant School District and Defendant DiFulvio had discriminated and retaliated against him in violation of the ADA and the Rehabilitation Act for the following reasons:

(i)    the vast majority of the allegations in the §3020-a charges are false, or at best, patently misleading;

(ii)    the few allegations which are factual, neither rise to the level of conduct for Defendant DiFulvio to file charges with the Board of Education nor, upon information and belief, warrant a finding of Probable Cause by the Board of Education that Plaintiff had violated Education Law §3020-a;

(iii)    each of the allegations set forth in the §3020-a charges occurred prior to Plaintiff being placed on administrative leave on May 17, 2023, yet despite having the information on which the §3020-a charges were allegedly based, Defendant School District did not conduct the full investigation or consider whether there was probable cause to bring disciplinary hearing until after Plaintiff filed the First Notice of Claim; and

(iv)    Plaintiff maintains the §3020-a charges were only filed in continued retaliation against Plaintiff for making the initial claims set forth in the First Notice of Claim and the First Notice of Claim itself.

84.    Education Law §3020-a (2)(iii) requires after the Board of Education finds probable cause to bring charges against Plaintiff under Education Law §3020-a (i) a written statement of the charges, (ii) the penalty which may be imposed and (iii) the employee's rights under §3020-a be "immediately" forwarded to the accused employee by "personal delivery" to the employee or by "certified or registered mail, return receipt requested".

85.    Defendant School District caused the notice required by Education Law §3020-a (2)(iii) to be placed in a clear envelope showing the Plaintiff's name and the nature of the charges.  The clear envelope then was taped in bright blue duct tape to the Plaintiff's front door

at his residence on March 20, 2024.

86.     Plaintiff's son came home from school to find the notice and the false allegations set forth on the transmittal form that Plaintiff was being charged with (i) immoral character, (ii) insubordination, (iii) conduct unbecoming, (iv) incompetency and (v) neglect of duty on the door.  Plaintiff's son was with friends who also saw the notice. It is unknown when the notice was posted or who else in the public may have seen it.

87.     The notice provisions of Education Law §3020-a were made to protect the privacy of the accused employee by providing the notice would not be published to third parties without due process. By publishing the false allegations about Plaintiff disparaging him in his occupation and professional capacity, in violation of the statutory service requirements, Defendant School District and Defendant DiFulvio committed defamation per se, to which no privilege, qualified or otherwise, attaches, and constitutes an abuse of process.

## AS AND FOR A FIRST CAUSE OF ACTION FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, §12203(a) (RETALIATION) AGAINST DEFENDANT SCHOOL DISTRICT

88.     Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth more fully herein.

89.     Defendant School District is a covered entity under The Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111(2).

90.     Defendant School District is an employer under the ADA, 42 U.S.C. §12111(5)(A).

91.     Defendant School District is a public entity under the ADA, 42 U.S.C. §12131(1)(B).

92.     Pursuant to 42 U.S.C. §12132, no individual with a disability shall, by reason of

such disability, be excluded from participation in or denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

93.     As set forth above, the actions of Defendant School District, by and through Defendants DiFulvio and Hagan, excluded individuals and denied them services, programs, and activities, in violation of 42 U.S.C. §12132.

94.     Pursuant to 42 U.S.C. §12203(a), no person shall discriminate against any individual because they opposed any act or practice made unlawful under the ADA.

95.     As set forth above, Plaintiff repeatedly opposed the unlawful practices of Defendants in failing to provide the services, programs, and activities to individuals with disabilities, in violation of the ADA.

96.     Only after Plaintiff in good faith opposed the unlawful practices by Defendant School District, Defendant DiFulvio engaged in a calculated effort to retaliate against Plaintiff by making false accusations regarding Plaintiff's job performance, placing Plaintiff on a Performance Improvement Plan based upon false accusations regarding his conduct, repeatedly seeking to embarrass and humiliate Plaintiff in front of other teachers and staff without justification, threatening Plaintiff with termination if he did not resign, placing Plaintiff on paid administrative leave after Plaintiff refused to resign, interfering with prospective job opportunities, instigating a sham investigation into Plaintiff's conduct without a good faith basis to do so, filing unfounded charges to terminate Plaintiff's employment under the New York Education Law and unnecessarily publicly posting the false charges in a place where the public, including, but not limited to, Plaintiff's son, were able to view them.

97.     Based upon the actions set forth above, Defendants discriminated against Plaintiff for opposing Defendants' illegal acts, in violation of 42 U.S.C. §12203(a).

98.     As a result of said intentional and willful discrimination and retaliation, Plaintiff has suffered damages including, but not limited to, back pay, including lost wages and benefits, front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

## AS AND FOR A SECOND CAUSE OF ACTION FOR
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT,
## §12203(b) (INTERFERENCE) AGAINST DEFENDANT SCHOOL DISTRICT

99.     Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth more fully herein.

100.    Pursuant to 42 U.S.C. §12203(b), it shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise of enjoyment of, or on account of his . . . having aided . . . any other individual in the exercise of enjoyment of any right granted or protected by the ADA.

101.    As set forth above, Plaintiff repeatedly opposed the unlawful practices of Defendants in failing to provide the services, programs, and activities to students with disabilities, in violation of the ADA.

102.    Based upon the actions set forth above, Defendants intimidated, threatened and interfered with Plaintiff and his job after he attempted to said aid students within Defendant School District by opposing Defendants' illegal acts, in violation of 42 U.S.C. §12203(b).

103.    As a result of said intentional and willful discrimination and retaliation, Plaintiff has suffered damages including, but not limited to, back pay, including lost wages and benefits, front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

## AS AND FOR A THIRD CAUSE OF ACTION

## FOR RETALIATION OF THE REHABILITATION ACT
## 29 U.S.C. §794, ET AL. AGAINST DEFENDANT SCHOOL DISTRICT

104.    Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth more fully herein.

105.    Pursuant to 29 U.S.C. §794(a), no individual with a disability shall solely by reason of his disability be excluded from the participation in, or denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any executive agency.

106.    Defendant School District operates programs or activities subject to 29 U.S.C. §794(a).

107.    Upon information and belief, the standard for retaliation claims under the Rehabilitation Act is the same as claims under the Americans with Disabilities Act.

108.    As factually set forth above, Plaintiff engaged in protected activities by complaining that Defendant School District failed to comply with its obligations under the Rehabilitation Act as it pertains to the treatment of students with disabilities.

109.    As a result of Plaintiff making the complaints, Defendant School District retaliated and discriminated against Plaintiff by materially changing the terms and conditions of his employment, including, but not limited to, suspending him on May 17, 2023, without cause, filing charges to terminate his employment under Section 3020-a of the New York Education Law without a valid basis to do so, and purposefully and publicly published notice of the charges in violation of the Education Law (the "Adverse Employment Actions").

110.    These Adverse Employment Actions took place because of Plaintiff making complaints about Defendants' actions in regards to students with disabilities.

111.    As a result of said intentional and willful discrimination and retaliation, Plaintiff has

suffered damages including, but not limited to, back pay, including lost wages and benefits, front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR VIOLATIONS OF EXECUTIVE LAW §296(1)(e) (DISCRIMINATION) AGAINST ALL DEFENDANTS

112.    Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth more fully herein.

114.    New York Executive Law §296(4) provides that it is unlawful for an "educational institution" to "deny use of its facilities to any person . . . or permit the harassment of any student . . . by reason of his disability."

115.    Defendant School District is an "educational institution" as defined by New York Executive Law §296(40). Plaintiff alleges Defendants' conduct as alleged above denied various students the use of Defendant School District's facilities and services by reason of their disabilities under §296(4).

116.    As set forth herein, Plaintiff consistently opposed Defendants' denial of use of its facilities and the harassment of students based upon their disabilities.

117.    Defendant School District and Defendants DiFulvio and Hagan, as aiders and abettors under Executive Law §296(6), discriminated against Plaintiff for opposing Defendant School District's practices forbidden by §296(4) by taking repeated adverse actions against Plaintiff as set forth above in violation of Executive Law §296(1)(e).

118.    New York Executive Law §296(1)(e) prohibits an employer from discharging, expelling or otherwise discriminating against a person because he has opposed practices forbidden by Article 15 of the Executive Law.

119.    Defendants discriminated against Plaintiff in violation of Executive Law §296(1)(e) for the reasons set forth herein, including, but not limited to, taking actions after Plaintiff complained about the unfair treatment, placing Plaintiff on a Performance Improvement Plan without a basis to do so, embarrassing and humiliating Plaintiff in front of other staff and administrators asserting false and baseless allegations, threatening to terminate Plaintiff's employment if he did not resign, placing Plaintiff on administrative leave after he refused to resign, interfering with prospective job opportunities, conducting a sham investigation into Plaintiff's conduct to find any potential grounds to terminate his employment after Plaintiff filed a Notice of Claim with Defendant School District based upon Defendants' impermissible conduct, filing baseless charges pursuant to New York Education Law §3020-a to terminate Plaintiff's employment and unnecessarily publicly publishing the false charges by affixing the charges to his residence door for the public to see in a clear envelope.

120.    As a result of the discrimination in violation of New York Executive Law §296(1)(e), Plaintiff has suffered damages including, but not limited to, back pay, including lost wages and benefits, front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR VIOLATIONS OF EXECUTIVE LAW §296(1)(h) (HARASSMENT) AGAINST ALL DEFENDANTS

121.    Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth more fully herein.

122.    New York Executive Law §296(4) provides that it is unlawful for an "educational institution" to "deny use of its facilities to any person . . . or permit the harassment of any student . . . by reason of his disability."

123.    Defendant School District is an "educational institution" as defined by New York Executive Law §296(40). Plaintiff alleges Defendants' conduct as alleged above denied various students the use of Defendant School District's facilities and services by reason of their disabilities under §296(4).

124.    As set forth herein, Plaintiff consistently opposed Defendants' denial of use of its facilities and the harassment of students based upon their disabilities.

125.    Defendant School District and Defendants DiFulvio and Hagan, as aiders and abettors under Executive Law §296(6), discriminated against Plaintiff for opposing Defendant School District's practices forbidden by §296(4) by taking repeated adverse actions against Plaintiff as set forth above in violation of Executive Law §296(1)(h).

126.    New York Executive Law §296(1)(h) provides it is an unlawful discriminatory practice for an employer to subject an individual to harassment because the individual has opposed any practices forbidden under Article 15 of the New York Executive Law.

127.    For the reason set forth in this complaint, after Plaintiff complained Defendants were discriminating against students in violation of the Executive Law based upon their disabilities, Defendants engaged in a pattern and practice of intentionally engaging in harassing conduct which caused a hostile work environment that other employees who had not complained of such conduct were not subjected to. Defendants' conduct, particularly that of Defendant DiFulvio, was so severe and pervasive it caused Plaintiff severe mental anguish.

128.    As a result of the harassment in violation of New York Executive Law §296(1)(h), Plaintiff has suffered damages including, but not limited to, back pay, including lost wages and benefits, front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR
## VIOLATIONS OF EXECUTIVE LAW
## §296(7) (RETALIATION) AGAINST ALL DEFENDANTS

129.    Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth more fully herein.

130.    New York Executive Law §296(4) provides that it is unlawful for an "educational institution" to "deny use of its facilities to any person . . . or permit the harassment of any student . . . by reason of his disability."

131.    Defendant School District is an "educational institution" as defined by New York Executive Law §296(40). Plaintiff alleges Defendants' conduct as alleged above denied various students the use of Defendant School District's facilities and services by reason of their disabilities under §296(4).

132.    As set forth herein, Plaintiff consistently opposed Defendants' denial of use of its facilities and the harassment of students based upon their disabilities.

133.    Defendant School District and Defendants DiFulvio and Hagan, as aiders and abettors under Executive Law §296(6), discriminated against Plaintiff for opposing Defendant School District's practices forbidden by §296(4) by taking repeated adverse actions against Plaintiff as set forth above in violation of Executive Law §296(7).

134.    New York Executive Law §296(7) provides it shall be unlawful discriminatory practice for a person engaged in any activity to which Section 296 applies to retaliate or discriminate because the person has opposed practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

135.    On or about July 28, 2023, the Plaintiff caused a Notice of Claim to be served upon Defendant School District based upon the allegations set forth herein and making

allegations Plaintiff had violated Article 15 of the New York Executive Law by discriminating, retaliating and harassing Plaintiff based upon his opposition to Defendants' conduct in discriminating against certain students of Defendant School District with disabilities.

136.    Upon information and belief, New York Education Law requires an individual to file a Notice of Claim with a school district prior to commencing any action.    Therefore, although Plaintiff had not yet filed a lawsuit or administrative claim with the New York State Division of Human Rights, as of July 28, 2023, Plaintiff had commenced the procedure by which to assert the Executive Law claims and Defendants were on notice of such.

137.    After receiving the Notice of Claim, Defendant School District and Defendant DiFulvio engaged in retaliatory conduct by commencing a baseless investigation into the Plaintiff of his conduct prior to being placed on paid administrative leave in an effort to manufacture evidence and facts to support filing charges under Education Law §3020-a to terminate his employment.    Defendants eventually filed charges to terminate Plaintiff's employment pursuant to Education Law §3020-a.    Plaintiff maintains the charges were either false and/or exaggerated and did not rise to any level which would warrant Plaintiff's termination under Education Law §3020-a.    Plaintiff maintains Defendants' action were in retaliation for Plaintiff filing a Notice of Claim and pursuing his remedies in this matter.

138.    As a result of the retaliation in violation of New York Executive Law §296(7), Plaintiff has suffered damages including, but not limited to, back pay, including lost wages and benefits, front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## FOR DEFAMATION

139.    Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth more

fully herein.

140.    Education Law §3020-a (2)(iii) requires after the Board of Education finds probable cause to bring charges against Plaintiff under Education Law §3020-a (i) a written statement of the charges, (ii) the penalty which may be imposed and (iii) the employee's rights under §3020-a be "immediately" forwarded to the accused employee by "personal delivery" to the employee or by "certified or registered mail, return receipt requested".

141.    Defendant School District caused the notice required by Education Law §3020-a (2)(iii) to be placed in a clear envelope showing the Plaintiff's name and the nature of the charges.  The clear envelope then was taped in bright blue duct tape to the Plaintiff's front door at his residence on March 20, 2024.

142.    Plaintiff's son came home from school to find the notice and the false allegations set forth on the transmittal form that Plaintiff was being charged with (i) immoral character, (ii) insubordination, (iii) conduct unbecoming, (iv) incompetency and (v) neglect of duty on the door.  Plaintiff's son was with friends who also saw the notice. It is unknown when the notice was posted or who else in the public may have seen it.

143.    The notice provisions of Education Law §3020-a were made to protect the privacy of the accused employee by providing the notice would not be published to third parties without due process. By publishing the false allegations about Plaintiff disparaging him in his occupation and professional capacity, in violation of the statutory service requirements, Defendant School District and Defendant DiFulvio committed defamation per se, to which no privilege, qualified or otherwise, attaches, and constitutes an abuse of process.

144.    As a result of Defendants' actions, Plaintiff has been damaged in that Defendants' actions have caused him pain, suffering and humiliation, Plaintiff has suffered damages for

Defendants' wrongful allegations concerning actions in his profession, and compensatory and punitive damages and attorneys' fees for Defendants' retaliation in violation of state and federal laws.

145.    As a result, Plaintiff has suffered damages, including, but not limited to, compensatory damages and punitive damages.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## FOR DEFAMATION PER SE

146.    Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth more fully herein.

147.    Education Law §3020-a (2)(iii) requires after the Board of Education finds probable cause to bring charges against Plaintiff under Education Law §3020-a (i) a written statement of the charges, (ii) the penalty which may be imposed and (iii) the employee's rights under §3020-a be "immediately" forwarded to the accused employee by "personal delivery" to the employee or by "certified or registered mail, return receipt requested".

149.    Defendant School District caused the notice required by Education Law §3020-a (2)(iii) to be placed in a clear envelope showing the Plaintiff's name and the nature of the charges.  The clear envelope then was taped in bright blue duct tape to the Plaintiff's front door at his residence on March 20, 2024.

149.    Plaintiff's son came home from school to find the notice and the false allegations set forth on the transmittal form that Plaintiff was being charged with (i) immoral character, (ii) insubordination, (iii) conduct unbecoming, (iv) incompetency and (v) neglect of duty on the door.  Plaintiff's son was with friends who also saw the notice. It is unknown when the notice was posted or who else in the public may have seen it.

150.    The notice provisions of Education Law §3020-a were made to protect the privacy

of the accused employee by providing the notice would not be published to third parties without due process. By publishing the false allegations about Plaintiff disparaging him in his occupation and professional capacity, in violation of the statutory service requirements, Defendant School District and Defendant DiFulvio committed defamation per se, to which no privilege, qualified or otherwise, attaches, and constitutes an abuse of process.

151.    As a result of Defendants' actions, Plaintiff has been damaged in that Defendants' actions have caused him pain, suffering and humiliation, Plaintiff has suffered damages per se for Defendants' wrongful allegations concerning actions in his profession, and compensatory and punitive damages and attorneys' fees for Defendants' retaliation in violation of state and federal laws.

152.    As a result, Plaintiff has suffered damages, including compensatory and punitive damages in an amount to be determined by a jury.

## JURY DEMAND

153.    Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth more fully herein.

154.    Plaintiff hereby demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff prays for an Order and Judgment of the Court:

a.    As and for the First Cause of Action against Defendant School District for damages, including, but not limited to, back pay, including lost wages and benefits, front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

b.    As and for the Second Cause of Action against Defendant School District for damages, including, but not limited to, back pay, including lost wages and benefits,

front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

c.      As and for the Third Cause of Action against Defendant School District for damages, including, but not limited to, back pay, including lost wages and benefits, front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

d.      As and for the Fourth Cause of Action against all Defendants for damages, including, but not limited to, back pay, including lost wages and benefits, front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

e.      As and for the Fifth Cause of Action against all Defendants for damages, including, but not limited to, back pay, including lost wages and benefits, front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

f.      As and for the Sixth Cause of Action against all Defendants for damages, including, but not limited to, back pay, including lost wages and benefits, front pay and/or reinstatement, pain and suffering and other compensatory damages, punitive damages, attorneys' fees, expert fees and all other costs.

g.      As and for the Seventh Cause of Action against Defendants for damages, including, but not limited to, compensatory and punitive damages.

h.      As and for the Eighth Cause of Action against Defendants for damages, including compensatory and punitive damages in an amount to be determined by a jury.

i.   As and for all such causes of action, such other and further relief as the Court deems
just and proper.

Dated:       February 25, 2025.

_____
**MERRITT S. LOCKE, ESQ.**
Federal Bar Roll No. 507164
**Saunders Kahler, L.L.P.**
Attorneys for Plaintiff – Patrick Ruddy
185 Genesee Street, Suite 1400
Utica, New York  13501
Telephone:  (315) 733-0419
Email:  mlocke@saunderskahler.com

**VERIFICATION**

STATE OF NEW YORK    }
                     }    ss.:
COUNTY OF ONEIDA     }

PATRICK RUDDY, being duly sworn, deposes and says that deponent is the Plaintiff in the within action; that deponent has read the foregoing Complaint With Jury Demand and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

Patrick Ruddy

Subscribed and sworn to before me
this 25 day of February, 2025.

Notary Public

JORDYN YOUNGLOVE
Notary Public, State of New York
Reg. No. 01YO0022487
Qualified in Madison County
Commission Expires 03/20/2028

**EXHIBIT A**



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>PATRICK RUDDY,<br><br>                 Complainant,<br><br>        v.<br><br>CAZENOVIA CENTRAL SCHOOL DISTRICT,<br>                 Respondent. | DETERMINATION AND ORDER OF DISMISSAL FOR ADMINISTRATIVE CONVENIENCE<br><br>Case No.<br>10234491 |

Federal Charge No. 16GC402956

On 3/8/2024, Patrick Ruddy filed a complaint with the New York State Division of Human Rights ("Division") charging the above-named Respondent with an unlawful discriminatory practice relating to employment because of opposed discrimination/retaliation, disability in violation of N.Y. Exec Law, art. 15 ("Human Rights Law").

Pursuant to Section 297.3 of the Human Rights Law, the Division finds that noticing the complaint for hearing would be undesirable and the complaint, therefore, is ordered dismissed on the grounds of administrative convenience for the following reason(s):

The Complainant intends to pursue federal remedies in court, in which forum all the issues concerning the question of discrimination charged can be resolved.

Section 297.9 of the Human Rights Law provides that:

... where the Division has dismissed such complaint on the grounds of the administrative convenience, ... such person shall maintain all rights to bring suit as if no complaint had been filed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition <u>within sixty (60) days after service of this Determination</u>. A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human

Rights, One Fordham Plaza, 4th Floor, Bronx, NY 10458. DO NOT FILE THE ORIGINAL
NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under the Americans with Disabilities Act (ADA).
Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment
Opportunity Commission (EEOC). You have the right to request a review by EEOC of this
action. To secure review, you must request it in writing, within 15 days of your receipt of this
letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York,
New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated:     November 18, 2024
           Albany, New York

                        STATE DIVISION OF HUMAN RIGHTS

By:     _____
        Maria Miranda
        Acting Regional Director

**EXHIBIT B**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/16/2024

**To:** Patrick Ruddy
6 Union Street
Cazenovia, NY 13035

Charge No: 16G-2024-02956

EEOC Representative and email:      HERNAN MORALES
State and Local Program Manager
HERNAN.MORALES@EEOC.GOV

### DISMISSAL OF CHARGE

The EEOC is closing this charge because: Charging Party wishes to pursue matter in Federal District Court.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Yaw Gyebi, Jr.
12/16/2024
Yaw Gyebi, Jr.
District Director

Cc:  **Cazenovia Central School District**
  **Attn: Superintendent of Schools**
  **31 Emory Avenue**
  **Cazenovia NY 13035**


  **Saunders Kahler LLP**
  **Attn: Merritt Locke – Esq**
  **185 Genesee Street**
  **Suite 1400**
  **Utica NY 13501-2194**


  **Hancock Estabrook LLP**
  **Attn: Lindsey Helmer Hazelton – Esq**
  **1800 AXA Tower I**
  **100 Madison Street**
  **Syracuse NY 13202**

Please retain this notice for your records.

**EXHIBIT C**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Buffalo Local Office**
300 Pearl St, Suite 450
Buffalo, NY 14202
(716) 431-5007
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/13/2024

**To:** Mr. Patrick Ruddy
6 Union Street
Cazenovia, NY 13035
Charge No: 525-2024-02545

EEOC Representative and email:     LINDSEY SAXER
Investigative Support Assistant
lindsey.saxer@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC is closing this charge because you have already filed a lawsuit in a state court on this matter.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 525-2024-02545.

On behalf of the Commission,

*Maureen Kielt*                    12/13/2024

Maureen Kielt
Local Office Director

**Cc:**

Christopher DiFulvio
Cazenovia Central School District
31 EMORY AVE
Cazenovia, NY 13035

Lindsey H Hazelton
Hancock Estabrook, LLP
100 MADISON ST STE 1800 AXA TOWER I
Syracuse, NY 13202

Merritt S Locke Esq.
Saunders Kahler, LLP
185 Genesee St Suite 1400
Utica, NY 13501

Please retain this notice for your records.